■ WALTER W. BOLAND, Individually and as Administrator of the Estate of AARON BOLAND, Deceased, and as Parent and Guardian of JENNIFER BOLAND, an Infant, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 79406.) [693 NYS2d 748] —Crew III, J. Appeal from a judgment of the Court of Claims (Benza, J.), entered February 18, 1998, upon a decision of the court in favor of the State.

The facts giving rise to this litigation are thoroughly set forth in our prior decision in this matter (218 AD2d 235). To

recapitulate, in 1988 claimant's children, Jennifer and Aaron, were residing with their stepmother in the City of Canandaigua, Ontario County, while claimant was overseas in the armed forces. On January 23, 1989, while waiting with her children for a school bus, a neighbor observed bruises to Aaron's face and head and notified the State Central Registry of Child Abuse and Maltreatment (hereinafter the State Registry). The State Registry determined that the information provided by the neighbor constituted a report of child abuse but erroneously reported the matter to the Child Protective Unit (hereinafter CPU) of Oneida County instead of the Ontario County CPU. It was not until January 25, 1989 that the mistake was rectified and the report was properly transmitted to the Ontario County CPU. Tragically, by that time Aaron had been severely beaten by his stepmother, as the result of which he died two days later. Jennifer was removed from the home and placed in protective custody, and the stepmother ultimately was convicted of manslaughter in the second degree in connection with Aaron's death (see, People v Boland, 187 AD2d 1014).

Claimant thereafter commenced this action against the State alleging, inter alia, negligence with respect to the operation of the State Registry. We upheld the denial of the State's subsequent motion for summary judgment and, in April 1997, the matter proceeded to trial. At the conclusion thereof, the Court of Claims granted the State's motion to dismiss the claim on the ground that claimant had not established, by a preponderance of the evidence, that the State's negligence was the proximate cause of Aaron's death. From the judgment entered thereon, claimant appeals.

In our view, in order to prevail, it was incumbent upon claimant to establish that had the hotline report been correctly routed in the first instance, a timely investigation would have ensued, with the investigator assigned to the case interviewing the stepmother and the children prior to the infliction of Aaron's fatal injuries and, based upon such interview, concluding that the stepmother posed such an imminent danger to the children's health that they would have been summarily removed from the home. As tragic as Aaron's death is, the proof simply failed to establish that the State's demonstrated negligence was the proximate cause of his death.* For that reason, we have little choice but to affirm the underlying judgment.

---

* Even assuming that claimant established proximate cause with regard to Aaron, the claim was properly dismissed as to Jennifer inasmuch as there is no record evidence that she sustained any injuries from the time of the

As a starting point, the assumption that representatives of the Ontario County CPU would have succeeded in contacting the stepmother and children within the time that elapsed between the receipt of the hotline report and the infliction of Aaron's fatal injuries is purely conjectural. Gloria Cronin, the Ontario County CPU supervisor who received the report from the State Registry at 10:00 A.M. on January 25, 1989, testified that the circumstances warranted the commencement of an investigation that same business day and, to that end, she notified the investigator assigned to this case. As to the intervening delay, the record reveals that the original report to the State Registry was made between 5:00 P.M. and 5:30 P.M. on the afternoon of January 23, 1989. While there was evidence that a report received after business hours would be directed to an authorized police agency which would, in turn, contact an on-duty, after-hours representative of the appropriate CPU, there was no evidence as to the procedure that then would have been employed. In other words, there was no proof that an after-hours notification would have resulted in an investigator being dispatched on the evening of January 23, 1989 or the following day.

Moreover, even assuming that an investigator had succeeded in interviewing the stepmother and the children on either January 23, 1989 or January 24, 1989, there is no indication that the children would have been removed from the residence at that time based upon a finding of imminent danger to their health or safety. To the contrary, the reasonable inferences that may be drawn from all of the testimony suggest that the children would not have been summarily removed from their home. Cronin testified that the determination to immediately remove Jennifer from the residence was precipitated not by what Jennifer revealed about the conduct of her stepmother toward her but, rather, by reason of the severe injuries for which Aaron had been hospitalized, a factor which would not have been present prior to January 25, 1989. Additionally, absent medical testimony as to Aaron's physical condition during the evening of January 23, 1989 or the early morning and day of January 24, 1989, any suggestion that he would have been summarily removed from the home at that time is speculative indeed. In short, the proof simply fails to establish by competent evidence that the State's negligence was a substantial factor in precipitating Aaron's death (see, Nastasi v State of New York, 55 AD2d 724). Accordingly, the judgment of the Court of Claims must be affirmed.

---

report to the State Registry until the time of her removal from her stepmother's home.

Mikoll, J. P., Mercure, Yesawich Jr. and Carpinello, JJ., concur. Ordered that the judgment is affirmed, without costs. [*See,* 176 Misc 2d 625.]